These appeals arise from the dismissal of Roderick Moore and Dwayne Pouncy from their employment by the Jefferson County Board of Education (the "Board") and their subsequent reinstatements. Moore and Pouncy were dismissed for violations of the Board's "Drug and Alcohol Program Procedure Policy," Board Policy No. 281 (the "Board policy"). Moore and Pouncy sought review of their dismissals under the Fair Dismissal Act ("FDA"), Ala. Code 1975, § 36-26-100 et seq. In each case, the employee review panel ordered reinstatement. The Jefferson Circuit Court affirmed both reinstatement orders, and the Board appealed. We affirm.
This Court's review is limited to the questions (1) whether there is substantial evidence to support each panel's decision, (2) "whether the findings and conclusions of the panel were contrary to the uncontradicted evidence, or [(3)] whether there was an improper application of the findings viewed in a legal sense." Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274,275-76 (Ala.Civ.App. 1994).
The evidence before this Court suggests that the Board followed the recommendation of the school superintendent and dismissed Pouncy, a truck driver, after he tested positive for marijuana in a post-accident drug test. It dismissed Moore, a journeyman painter, after he reported to work intoxicated. Moore and Pouncy, pursuant to the FDA, appealed the Board's decisions. The respective employee reviewing panels decided that termination was not warranted. Instead, the panels ordered Moore and Pouncy to undergo substance abuse rehabilitation and ordered the Board to reinstate them after they satisfactorily completed the rehabilitation.
The Board petitioned the Circuit Court of Jefferson County for a writ of certiorari, requesting reversal of the employee panels' decisions. In each case, although the trial court did not agree with the panel's decision, it held that the decision was supported by substantial evidence.
Review of a board decision by an employee review panel is de novo. It is fully within the panel's discretion to substitute its judgment for that of the board. Birmingham Bd. of Educ. v.Holifield, 604 So.2d 422 *Page 1149 
(Ala.Civ.App. 1991). However, the panel's review is not without limits:
 "[T]he panel shall consider whether the action of the board or its administrative staff was arbitrary or unjust or for political or personal reasons on the part of any member on the board or its staff and whether the board's action was warranted based upon the facts of the case and the employment record of the employee."
Ala. Code 1975, § 36-26-106 (emphasis added).
The Board argues that the decisions of the employee review panels were not supported by substantial evidence, because the evidence before the panels conclusively established that Moore and Pouncy (1) had violated the Board policy; (2) had voluntarily submitted to being tested for drugs after being suspected of violating the Board policy; (3) had not contested the results of their respective tests, which were positive; and (4) were aware that they could be, and would likely be, terminated for violating the Board policy.
Moore and Pouncy contend that the employee review panels' decisions were supported by substantial evidence. They argue: (1) that the Board violated its own policy, which requires that the employee be given an opportunity for rehabilitation and an opportunity to return to work after becoming substance-free; and (2) that Moore and Pouncy both had excellent employment records. Separately, Moore challenges the appropriateness of his termination because: (1) he contends that his supervisor had no basis for suspecting that he was intoxicated, and thus, had no basis for subjecting him to a breath test,[1] (2) he introduced evidence indicating that others suspected of being under the influence of alcohol were sent home to sober up, and, thus, he argues, his treatment was inconsistent with Board practice; and (3) he introduced evidence indicating that inhaling paint solvents will cause the alcohol test to register positive, and because he inhaled paint solvents before the breath test, he argues that the results of the test were unreliable. Pouncy contends that he should not have been terminated because: (1) he says that marijuana can stay in the system 30 to 40 days and, thus, the Board produced no evidence of "actual" work impairment; and (2) he says he should not have been subjected to a drug test, because federal law requires only that those with commercial driver's licenses be subjected to drug testing and only if (a) there is an accident and someone is injured, or (b) the driver is issued a citation for a "moving" violation (neither of these happened in Pouncy's case).
In each case, the employee review panel held that termination of employment was not proper, based primarily on the fact that Moore and Pouncy both had had essentially perfect work histories. Moore's panel found that the Board had failed to consider his employment record (no evidence was introduced of any previous disciplinary action during his entire 12-year work history), and that the Board had failed to establish an objective criterion for evaluating situations like his (thereby creating a question whether the Board's decision was arbitrary and unjust). Pouncy's panel, based on his employment record of more than 15 years and on Board Policy No. 281,[2] determined that drug rehabilitation and temporary suspension without pay for a period not exceeding four months was appropriate.
While this Court might have chosen sanctions different from those chosen by the employee panels, it is not our province to substitute our opinion for that of the employee panel as to the appropriate sanction for Board employees who have tested positive for drugs or alcohol. Section 36-26-106 provides *Page 1150 
that "[t]he decision of the panel shall be final and binding upon the parties." Any change in this policy lies with the Legislature.
The panels were required by the FDA to consider the employment records of Moore and Pouncy. There was substantial evidence that each of them had an excellent employment record on which the panel could have relied to determine that termination of employment was inappropriate. Therefore, we find no abuse of discretion by the employee panels in ordering that Moore and Pouncy be reinstated after successfully completing their rehabilitation programs.[3]
The Board also challenges the constitutionality of the FDA. It contends, first, that the FDA violates § 45 of the AlabamaConstitution of 1901 by addressing more than one subject. Section 45 provides in pertinent part:
 "Each law shall contain but one subject, which shall be clearly expressed in its title. . . ."
The Board acknowledges that the overall purpose of the FDA is to provide a fair dismissal procedure for a full-time nonteacher or nonclassified school system employee, but contends that because the statute also addresses discipline in the form of reprimands, censures, and suspensions with or without pay, it encompasses more than a single subject and is, therefore, unconstitutional.
Admittedly, as this Court has stated, "the 'Fair Dismissal Act' is not a model of legislative clarity." Bolton v. Board ofSch. Comm'rs of Mobile County, 514 So.2d 820, 824 (Ala. 1987). Its purpose, however, is clear: "to provide . . . a fair and swift resolution of proposed employment terminations." Id. The Board's proffered construction would preclude consideration of suspension, for example, as an alternative to termination. In fact, lesser sanctions are not separate subjects, but are an essential component of a fair-dismissal process.[4]
The Board also challenges the constitutionality of the FDA under § 125 of the Constitution of Alabama of 1901,[5] contending that the Governor invalidly amended House Bill 296 (the "Bill"), which eventually became the FDA. The Board asserts that the Governor submitted an executive amendment that did not comply with § 125, in that it did not include a statement of the Governor's objections, *Page 1151 
and that the subsequent enactment is therefore invalid.
In fact, when the Bill was submitted to the Governor for his signature, he returned it to the House unsigned, requesting that sections 6 and 7 be deleted. This was a specific indication of his objections to the Bill. The Governor also provided the House with language that he would approve for those sections. The Governor concluded his message to the House with the statement that "the adoption of the above and foregoing suggested Executive Amendment will remove myobjections to this Bill." (Emphasis added.) House Journal of Alabama 2, pp. 1595-96 (Regular Session 1983). The Bill, with the Governor's amendments, passed both the House and the Senate, in full compliance with § 125.
Because the Board has failed to establish that the employee review panels abused their discretion by reinstating Moore and Pouncy, and because the Board has failed to prove that the FDA violates § 45 or § 125 of the Alabama Constitution, the judgments of the trial court are affirmed.
1960615 — AFFIRMED.
1960616 — AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, COOK, and SEE, JJ., concur.
[1] Moore's supervisor testified that he did not suspect that Moore was under the influence of alcohol, because, the supervisor said, Moore was not behaving in an impaired fashion and was adequately performing his job just prior to the test.
[2] The "Discipline" section of Board Policy No. 281 provides in pertinent part:
 "All employees who test positive in a confirmed substance test will be subject to discipline up to and including discharge. Rehabilitation, at a pre-approved treatment provider, may be available to individuals who violate the policy."
Thus, although termination of employment is permissible, it is not the only form of discipline provided by the Board policy.
[3] The Board also contends that Alabama public policy precludes reinstatement of Moore and Pouncy, citing Hobson v. AmericanCast Iron Pipe Co., 690 So.2d 341 (Ala. 1997). Hobson's public policy holding, however, cannot control the outcome here, because the legislature has provided a specific statute to address the specific issue in this case. Tuscaloosa CountyComm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County,589 So.2d 687, 689 (Ala. 1991).
[4] See Ex parte Holifield, 604 So.2d 420, 422 (Ala. 1991) (stating that " 'reasonableness must be read into the provisions [of the FDA]' ") (quoting Bolton, 514 So.2d at 824);State v. Ballard, 341 So.2d 957, 959 (Ala.Crim.App. 1976), writ quashed, 341 So.2d 962 (Ala. 1977) (stating that "a statute will, if possible, be so construed as to render it valid").
[5] Ala. Const. art. V., § 125 (1901) provides in pertinent part:
 "Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it originated, which shall enter the objections at large upon the journal and proceed to reconsider it. If the governor's message proposes no amendment which would remove his objections to the bill, the house in which the bill originated may proceed to reconsider it, and if a majority of the whole number elected to that house vote for the passage of the bill, it shall be sent to the other house, which shall in like manner reconsider, and if a majority of the whole number elected to that house vote for the passage of the bill, the same shall become a law, notwithstanding the governor's veto. If the governor's message proposes amendment, which would remove his objections, the house to which it is sent may so amend the bill and send it with the governor's message to the other house, which may adopt, but can not amend, said amendment; and both houses concurring in the amendment, the bill shall again be sent to the governor and acted on by him as other bills. If the house to which the bill is returned refuses to make such amendment, it shall proceed to reconsider it; and if a majority of the whole number elected to that house shall vote for the passage of the bill, it shall be sent with the objections to the other house, by which it shall likewise be reconsidered, and if approved by a majority of the whole number elected to that house, it shall become a law."